730 So.2d 998 (1999)
STATE of Louisiana, Appellee,
v.
Jody FRANKS, Appellant.
No. 31,641-KA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1999.
*1000 Charles R. Blaylock, Monroe, for Appellant.
Richard Ieyoub, Attorney General, William R. Coenen, Jr., District Attorney, Johnny R. Boothe, Assistant District Attorney, Counsel for Appellee.
Before WILLIAMS, GASKINS and DREW, JJ.
DREW, J.
Jody Franks entered a Crosby plea [State v. Crosby, 338 So.2d 584 (La.1976)] to the crime of DWI, 3rd offense, in exchange for an agreed upon sentence of five years at hard labor with six months to be served without benefit of probation, parole or suspension of sentence. The remainder of the sentence was suspended and defendant was placed on active supervised probation subject to certain conditions. Defendant appeals and assigns errors. In addition to seeking reversal of the trial court's denial of his motion to quash the two predicate offenses, defendant urges that the trial court erred by finding him guilty of DWI, 3rd offense; by finding *1001 probable cause existed for defendant's arrest; by failing to sustain defendant's motion to suppress; by admitting into evidence the DPS rights form over his objection and by failing to dismiss due to errors patent on the face of the record. Finding no merit to these complaints, we affirm the conviction and sentence.

FACTS
While on duty on December 24, 1995, in Franklin Parish, Louisiana, State Trooper Randal Lowery responded to a call from the Franklin Parish Sheriff's Office concerning an accident on Highway 572. A deputy showed Trooper Lowery a vehicle which had run off the roadway and was stuck in the ditch across the opposite side of the highway from its lane of travel. Two persons were sleeping in the pickup truck which was not running and was undamaged. Ruts on the shoulder revealed the path of the truck into the ditch.
When the trooper awoke the defendant, who occupied the driver's seat, he detected a strong odor of alcohol and noted defendant's eyes were red and bloodshot. Disoriented and unsteady on his feet, the defendant appeared intoxicated and required the trooper's assistance in exiting the vehicle. The defendant informed Trooper Lowery that he had been drinking in Starkey County, Mississippi and at the Highway 4 Bar in Tensas Parish. The trooper estimated that the bar was about ten miles away. The trooper administered two field sobriety tests: the horizontal gaze nystagmus test and the walk and turn test. Swaying badly during both, the defendant failed the horizontal gaze test and did not touch heel to toe on the walk and turn test.
After the tests, the trooper placed the defendant under arrest for careless operation and DWI and advised him of his rights by reading him the Miranda warnings. Trooper Lowery declared that defendant was awake, knew what was going on and was not so intoxicated that he could not understand his rights. The trooper testified that defendant understood and waived his rights. En route to the detention center, defendant stated that he lost control of the car and went into the ditch.
At the detention center, Trooper Lowery again read defendant his rights. Defendant explained that he had been driving the vehicle but could not remember where he was going. Defendant stated he started drinking in Mississippi where he had two to six drinks plus another at the Highway 4 Bar. Defendant also said he had taken Nyquil and some Darvocet, but he had nothing to drink after the accident. The officer did not observe any liquor, mixed drinks or beer in the vehicle but acknowledged that it was possible some alcohol could have been in the truck under the seat. Trooper Lowery read the defendant his rights before ordering a chemical test for intoxication. Defendant consented and signed the form. The Intoxilizer test result revealed defendant's BAC was .167 grams/percent, well over the statutory definition of DWI.

DISCUSSION

Assignments of Error 1 and 2
Defendant contends that the trial court erred by denying his motion to quash the two predicate DWI offenses: Richland Parish Docket No. 54,189, January 9, 1991, and Richland Parish Docket No. M93-445, November 3, 1993. Defendant argued that the prior pleas were not knowingly and voluntarily made and were not in compliance with the three-rights articulation rule. Defendant also urged that the 1991 conviction cannot be used for enhancement, since the defendant's waiver of counsel was improperly given. According to the defendant, neither the 1991 nor the 1993 guilty pleas contained the trial court's assessment of the defendant's literacy, competency, understanding and volition before acceptance of defendant's guilty pleas.
For a misdemeanor guilty plea to be used as a basis for actual imprisonment, enhancement of actual imprisonment, or conversion of a subsequent misdemeanor into a felony, the trial judge must have informed the defendant that by pleading guilty he waived his privilege against compulsory self-incrimination, his right to trial and jury trial where it is applicable, and his right to confront *1002 his accuser. Additionally, the trial judge must have ascertained that the accused understood what the plea connotes and its consequences. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Jones, 404 So.2d 1192, 1196 (La. 1981). The burden of proof is on the state to prove that the defendant expressly and knowingly waived his Boykin rights when entering his guilty plea to the predicate offenses. The state may rely upon a contemporaneous record of the guilty plea proceedings; i.e, the minute entry or the transcript itself. State v. Lott, 29,082 (La.App.2d Cir.1/22/97), 688 So.2d 608, writ denied, 97-0711 (La.9/26/97), 701 So.2d 979.
Defendant's complaint about waiver of counsel having been improperly accepted in 1991 is without merit. The January 9, 1991 court minutes state that:
The accused party appeared in open court without attorney for arraignment. Defendant waived arraignment and entered a plea of guilty to the charge. The Court appointed Sonny Stephens to represent defendant for purposes of his plea. (Exh. S-2).
The introduction to the Boykin transcript notes the following:
On Wednesday, January 9, 1991, each of the above named defendants appeared in open court with counsel. The defendants having been first duly sworn, the following Boykin examination was conducted and sentence imposed by the Hon. Glynn D. Roberts, Judge, in each of the hereinabove styled and numbered cases, to wit:
There was no waiver of counsel in 1991. While the transcript shows that the attorney did not participate in the Boykin colloquy, the defendant was represented when he pleaded guilty in 1991.
Defendant was also represented by counsel at the 1993 conviction for DWI. The November 3, 1993 minutes state that the accused appeared in open court for trial with his court-appointed attorney who withdrew, on behalf of defendant, a former plea of not guilty and entered a plea of guilty. The cover sheet of the November 3, 1993 transcript states that Jody W. Franks appeared with his court-appointed attorney.
Defendant objects that the trial court did not ascertain his literacy, competency, understanding and volition at either the 1991 or 1993 guilty pleas for DWI. In both the 1991 and 1993 Boykin colloquies, the court took the pleas of several defendants at once. The evidence introduced in this matter established that defendant was represented by counsel at both predicate pleas.
Defendant's reliance on State v. Shelton, 621 So.2d 769 (La.1993) is misplaced, since that opinion sets out the burden of proof concerning prior offenses in habitual offender prosecutions. The language upon which defendant relies from State v. Walpole, 459 So.2d 172 (La.App. 2d Cir.1984), is that the trial court must assess defendant's competency, literacy, volition, and understanding before accepting a defendant's waiver of counsel. While correct, that is inapplicable here, since the defendant was represented by counsel at both predicate guilty pleas.
In the 1991 colloquy, the court advised the group of defendants of the following rights:
You have the right to a trial in this case should you plead not guilty instead of guilty.
Should you plead not guilty and go to trial, you would have the right to be represented by an attorney and if you're indigent, that is financially unable to employ an attorney, the Court would appoint one to represent you without any cost to you.
Should you plead not guilty and go to trial, the District Attorney would have the burden of proving your guilt beyond a reasonable doubt. In the event of a trial, you and your attorney would have the right and the opportunity to face and cross-examine all witnesses called by the prosecution against you. Also in the event of a trial, you would have the right to use the process of the court in order to obtain and present any witnesses and/or evidence which may be favorable to you.
Also each of you would have and enjoy the privilege against self-incrimination. That is you would not have to do anything or make any statements which would tend to *1003 implicate you as being guilty of any criminal offense. By coming into Court here at this time and expressing your desire to plead guilty of this charge you are, in fact, incriminating yourself and you do not have to do that.
Also if you plead not guilty and went to trial you would still have the privilege against incriminating yourself. That means you would have the right to remain silent and not testify if you elected to do so. If you did elect to remain silent and not testify that fact could not be construed against you in any way.
There is an enhanced penalty to a second or subsequent conviction of another charge of driving while intoxicated. In the future, should you be convicted of a second offense driving while intoxicated charge, the law provides that you shall be fined not less than three hundred dollars and not more than one thousand dollars and imprisoned for not less than thirty days nor more than six months.
The court then conducted an individual colloquy with each defendant. The court's colloquy with Franks went as follows:
Q (Court): Do you understand the rights I've explained to you?
A: Yes, sir.
Q: Do you understand that by pleading guilty, you waive and give up those rights?
A: Yes, sir.
Q: Do you understand the enhanced penalties for a second or subsequent conviction of another charge of driving while intoxicated?
A: Yes, sir.
Q: Understanding your rights and understanding the enhanced penalties do you still desire to enter this plea of guilty to this charge?
A: Yes, sir.
The court then recited a few facts of the offense, including Franks' BAC of .10.
The court's Boykin and penalty advice in the 1993 plea is nearly identical to that quoted above from the 1991 plea, except that in the 1993 plea the court did not include the first sentence which explicitly advised the defendants that they have the right to a trial if they plead not guilty.
Nevertheless, in both pleas, the defendant was made aware that he could elect to plead not guilty and have a trial, that he had the right to confront his accusers and that he had the privilege against self-incrimination. In both instances, the defendant indicated his understanding of these rights. Further, the defendant heard and indicated his understanding of the potential penalties for subsequent convictions of DWI. In both pleas the court clearly advised the defendant of his Boykin rights and adequately informed him of the consequences of his plea. State v. Jones, supra.
At the hearing on the motion to suppress, the defendant argued that there was insufficient evidence that the persons in the 1991 and 1993 DWI transcripts were the same Jody Franks as the defendant in this matter. While the state did not introduce evidence that the defendant was the same person convicted in the earlier offenses, that pertains to the sufficiency of the state's proof of the charge. See City of Monroe v. French, 345 So.2d 23 (La.1977). This defendant pleaded guilty to DWI, 3rd offense. At this guilty plea, the defendant specifically admitted that he was the same person convicted in the earlier offenses. There was no need for the state to prove his identity. These assignments of error are without merit.

Assignments of Error 3 and 5
Because the truck was stopped off the road with the motor off and with defendant and another person asleep inside, defendant urges that the trial court erred in concluding that the trooper had probable cause to arrest defendant. Additionally, defendant asserts the trial court erroneously denied defendant's motion to suppress. Finally the defendant requests that the evidence resulting from the illegal arrest should have been excluded. Great weight is afforded to the trial court's determination of a motion to suppress, as it had the opportunity to observe the witnesses and to weigh the credibility of their testimony. State v. Goodjoint, 30,727 (La.App.2d Cir.6/24/98), 716 So.2d 139.
*1004 Trooper Lowery was dispatched to the defendant's location by radio. When he arrived, a deputy showed him a vehicle which had run off of the highway and was stuck in a ditch opposite its lane of travel. Visible tire tracks showed the truck's path into the ditch. Even apart from the driver's apparent violation of the traffic laws (including La. R.S. 32:58, careless operation), the trooper was warranted in contacting the defendant to see if he was sick, injured or needed assistance in removing his vehicle from the ditch. The initial contact between the trooper and the defendant was lawful.
The trooper's subsequent detention of the defendant was lawful because the trooper immediately observed that the defendant appeared intoxicated. La.C.Cr.P. art. 215.1 A. provides:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
Because the defendant appeared drunk and was sitting behind the wheel of a truck immobilized in a ditch, the trooper had ample reason to suspect the defendant of violating La. R.S. 14:98. Notwithstanding defendant's complaints that no proof existed that or when defendant had been operating the vehicle, the trooper's reasonable suspicion was sufficient justification for the trooper to detain the defendant. See State v. Keller, 403 So.2d 693 (La.1981) and State v. Sims, 426 So.2d 148 (La.1983). During the trooper's initial lawful contact with the defendant, the defendant spontaneously stated he had been drinking. After he was arrested and advised of his rights, defendant stated he had been driving the vehicle.
The trooper also had probable cause to arrest the defendant for DWI.
Probable cause to arrest exists when the facts and circumstances within the officer's knowledge are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. The determination of probable cause, although requiring something more than bare suspicion, does not require evidence sufficient to support a conviction. Probable cause, as the very name implies, deals with probabilities. The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the available evidence supports a reasonable belief that the person to be arrested has committed a crime. The determination of probable cause involves factual and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act.

State v. Simms, 571 So.2d 145, 148-149 (La.1990).
To arrest the defendant, the trooper did not need proof beyond a reasonable doubt that the defendant had been operating his vehicle under the influence of alcohol. See State v. Willson, 534 So.2d 55 (La.App. 3rd. Cir.1988), and the other sufficiency of evidence cases cited therein. Rather, he needed only "a reasonable belief that the person to be arrested has committed a crime." The defendant was sitting in the driver's seat of a truck which had obviously run off of the road. The truck was in the ditch across the highway from its lane of travel. The defendant smelled strongly of alcohol and bore other indicia of intoxication. The defendant told the officer that he had been drinking at two bars, one in Mississippi and one "at least ten miles" away. The defendant failed the field sobriety tests. No alcohol was visible in the vehicle. All of this evidence was sufficient to establish probable cause for the trooper to arrest the defendant for DWI. The trial court properly denied defendant's motion to suppress. See State v. Skeetoe, 501 So.2d 931 (La.App. 2d Cir.1987) and State v. Johnson, 29,250 (La.App.2d Cir.8/14/96), 688 So.2d 1075. This assignment of error is without merit.

Assignment of Error 4
The defendant argues that the trial court erred in admitting into evidence the Department *1005 of Public Safety and Corrections form for "Rights Relating to Chemical Test for Intoxication (S-1)." Because the defendant was not on a public highway, defendant asserts that the Implied Consent Law, La. R.S. 32:661 et seq., was inapplicable and the test administered was unlawful. In 1995, La. R.S. 32:661 provided, in pertinent part:
A. (1) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of R.S. 32:662, to a chemical test or tests of his blood, breath, urine, or other bodily substance for the purpose of determining the alcoholic content of his blood, and the presence of any abused or illegal controlled dangerous substance as set forth in R.S. 40:964 in his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while believed to be under the influence of alcoholic beverages or any abused or illegal controlled dangerous substance as set forth in R.S. 40:964.
(2) The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of either alcoholic beverages or any abused or illegal controlled dangerous substance as set forth in R.S. 40:964. The law enforcement agency by which such officer is employed shall designate which of the aforesaid tests shall be administered.
La. R.S. 32:1(25) provides:
"Highway" means the entire width between the boundary lines of every way or place of whatever nature publicly maintained and open to the use of the public for the purpose of vehicular travel, including bridges, causeways, tunnels and ferries; synonymous with the word "street."
The trooper's observations make it clear that the vehicle in which the defendant was sleeping had been traveling on the highway but skidded off of the highway into the adjacent ditch. Thus, the trooper had "reasonable grounds to believe" that the defendant had been "driving or in actual physical control of a motor vehicle upon the public highways...." Accordingly, the implied consent law applied to the defendant.
Moreover, it is well-settled that behavioral manifestations, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. It is not necessary that a conviction of DWI be based upon a blood or breath alcohol test, and the observations of an arresting officer may be sufficient to establish defendant's guilt. Intoxication is an observable condition about which a witness may testify. State v. Courtney, 30,629 (La.App.2d Cir.5/13/98), 714 So. 2d 176. The trooper's observations of the defendant's behavior were more than sufficient to prove that the defendant was under the influence of alcohol, and the chemical test would have been redundant even if it had not been admissible.
In his motion to suppress and at the hearing, the defendant argued that the trooper did not have sufficient reason to conduct the field sobriety tests that led to his arrest. That contention is disposed of in the earlier discussion. The smell of alcohol on the defendant and his appearance of intoxication were more than adequate to justify the tests. Other complaints raised in brief were not made in defendant's motion to suppress or at the hearing. Therefore, they are not subject to review on appeal. La.C.Cr.P. art. 841; State v. Bass, 595 So.2d 820, 823 (La.App. 2d Cir.1992), writ denied, 598 So.2d 373 (La. 1992). This assignment of error is without merit.

Assignment of Error 6
For the reasons set out above, defendant's complaints about the validity of the predicate offenses and the motions to suppress are erroneous. Defendant's assertion that the trial court erred in finding defendant guilty of DWI, 3rd offense, is without merit.

Assignment of Error 7
Finally, our error patent review revealed that the trial court failed to inform the defendant of the prescriptive period of post conviction *1006 relief. The three-year prescriptive period begins to run from the date that the conviction and sentence become final. La. C.Cr.P. art. 930.8 Therefore, prescription has not begun. The district court is directed to so inform defendant by written notice within 30 days of this judgment and to file proof of receipt of that notice into the record. State v. Courtney, supra. The trial court's failure to inform the defendant of the time for filing an appeal was made moot by the fact that his attorney immediately made a motion to appeal and obtained the appeal order the same day.

DECREE
For the reasons stated above, Jody Franks' conviction and sentence are AFFIRMED.